Jeremy Lessem, Esq. SBN: 213406
Lessem, Newstat & Tooson, LLP
3450 Cahuenga Blvd. W. Suite 102
Los Angeles, CA 90068
Jeremy@LnLegal.com
Phone: (818) 392-4020
Facsimile: (818) 484-3087

Attorney for Defendant
Byungsu Kim

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No: CR 2:19-329-GW |
| Plaintiff, | |
| vs. | **DEFENDANT SENTENCING POSITION; EXHIBIT A** |
| BYUNGSU KIM, | **Sentencing Date: January 13, 2022** |
| Defendant. | **Hearing Time: 8:00am** |

**TO THE HONORABLE GEORGE WU, UNITED STATES DISTRICT JUDGE, THE UNITED STATES ATTORNEY'S OFFICE AND ITS ATTORNEYS OF RECORD, ASSISTANT UNITED STATES ATTORNEYS MATTHEW O'BRIEN AND DENNIS MITCHELL, AND UNITED STATES PROBATION OFFICER KIM CASSULO:**

Defendant Byungsu Kim (hereinafter the "*Defendant*"), by and through counsel of record, Jeremy I. Lessem, hereby files Defendant's Position Regarding Sentencing in the above-entitled matter.

Dated: January 5, 2022                    Respectfully submitted,


By:     __//s// Jeremy Lessem_____
        JEREMY I. LESSEM
        Attorney for Defendant
        Byungsu Kim

DEFENDANT'S SENTENCING POSITION MEMORANDUM

# I.

## INTRODUCTION

Byungsu Kim grew up in rural South Korea. His father worked in transportation and his mother sold flowers. He grew up poor, often forced to move when his parents couldn't afford rent. At times Mr. Kim's parents couldn't even afford to put enough food on the table for him and his three sisters. Determined to one day provide a better and more stable life for his own family, Mr. Kim managed to graduate from high school and then went to work in the agricultural industry. With hard work and determination, in 2011 Mr. Kim managed to purchase a small piece of land that he used to grow various kinds of plants and shrubs which he sold to local nurseries. Eventually, Mr. Kim got married and had two daughters, now aged 6 and 16. As a small farmer, Mr. Kim was successful in providing a modest yet stable life for his family.

In the beginning of 2018, Mr. Kim began to become interested in growing Dudleya plants. These small succulents were trendy house plants in South Korea, where they were valued for their looks and relative scarcity. Dudleya grow indigenously in many coastal areas across the Western part of the United States but are extremely rare and difficult to grow in South Korea. Mr. Kim saw growing Dudleya, along with several other plants found in other parts of the world, as a way to provide additional income for his family that he could use to pay for the education of his two girls.

With this as the backdrop, Mr. Kim organized a trip with two friends to the United States. His goal was to harvest several boxes of wild Dudleya, which he would have shipped back to South Korea. Upon returning to South Korea, Mr. Kim intended to sell several boxes to existing nursery clients and keep a few boxes for himself. Mr. Kim intended to use the plants to begin growing Dudleya himself, with the hope of adding the succulents to his own small farming business.

Without question, Mr. Kim knew that what he was doing was against the law. He made that clear to his co-conspirators. However, Mr. Kim truly had no idea of the

DEFENDANT'S SENTENCING POSITION MEMORANDUM

serious nature of his actions. In Mr. Kim's experience, harvesting plants on public land in South Korea was often ignored or met with monetary fines. While Mr. Kim and his associates knew they needed to act surreptitiously in order to successfully export the Dudleya back home, the idea that being caught would be treated with jail time (let alone years of jail) was not something that had occurred to any of them.

In October of 2019, Mr. Kim was arrested in South Africa for harvesting a small amount of a different indigenous plant. His case was resolved after about 3 months, at which time he was given the equivalent of time served. However, rather than being released, Mr. Kim spent approximately 9 additional months in a Cape Town jail awaiting extradition to the United States. During this time, Mr. Kim survived in horrific conditions. The Cape Town jail was filthy and unsafe. Lice infestations were common, and inmates were only a single meal per day. On top of that, Mr. Kim speaks only Korean. He served this time in near complete isolation, with no one to socialize or communicate with. With only limited access to an interpreter from the South Korean consulate, Mr. Kim often had no idea of his current legal status or when he might be released. With no financial resources, Mr. Kim also lacked the ability to communicate directly with family and friends back home.

Since being transferred to federal custody in October 2020, Mr. Kim has remained in near total isolation. While he has had some limited telephone communication with his eldest sister and wife, Mr. Kim has not spoken to either of his daughters in more than two years. His wife has since filed for legal separation and both of his elderly parents (aged 88 and 83) reside in nursing homes in extremely bad health.

Mr. Kim takes full responsibility for his transgressions. He knowingly and willfully broke American laws for financial gain. He now truly understands the gravity of his actions and the seriousness with which the American system takes these environmental crimes. While technically only eligible for 442 days of actual credit, in reality, Mr. Kim has served just under two years in custody for this offense. Further, he

DEFENDANT'S SENTENCING POSITION MEMORANDUM

has served that time in two foreign countries, with little to no contact with his family, and among inmates and guards that he cannot meaningfully communicate with. All Mr. Kim wants to do is return home as soon as possible, mend the relationships with his daughters and go back to being a simple farmer.

For these reasons and those discussed below, the defense asserts that Mr. Kim's debt to society has been paid, and the time for him to be allowed to move on with is life has arrived.

## II.

## PROCEDURAL BACKGROUND

A. Federal Custody

Defendant has been in continuous federal custody since October 29, 2020. Additionally, Defendant was in South African custody awaiting extradition to the United States from January 28, 2020, until being extradited in October of 2020.

B. The Plea Agreement

On September 9, 2021, Defendant plead guilty to count two of the indictment, a violation of 16 U.S.C. § 3372(a)(2)(B), attempting to export plants taken in violation of state law. In the plea agreement, Defendant agreed to a base offense level of 6, a 2-level increase for pecuniary gain and an additional 2-level increase for aggravating role. The plea agreement further contemplates a 3-level reduction for acceptance of responsibility.

The parties did not come to an agreement on the market value of the harvested Dudleya plants. A government retained expert estimated the re-sale value of the plants as being between $113,755 and $225,415. The Pre-Sentence Report ("PSR") takes the midpoint of the government estimate and suggests a loss amount of more than $150,000 but less than $250,000. Pursuant to §2B.1(b)(1)(F), the PSR applies a 10-level increase on this basis. Defendant objects to this loss amount and provides an expert report of its own, calculating a loss amount of $108,793.75. This corresponds to an 8-level increase

of the base offense level. A true and correct copy of the declaration of defense expert Sung Kyung Kim is attached hereto as Ex. A.

The PSR calculates a total offense level of 17. Assuming that the criminal history category is I, the advisory sentencing range is 24-30 months. The Defendant asserts a total offense level of 15, with an advisory sentencing range of 18-24 months.

The PSR accurately describes the charges and factual basis behind the allegations in this case.

C. Minimum and Maximum Possible Sentence

Count 2 of the indictment carries a maximum sentence of 5 years imprisonment and a $250,000 fine. The court may impose a term of supervised release of not more than 3 years.

D. Defendant's Financial Condition and Inability to Pay a Fine

Defendant agrees with the assessment in the PSR that he does not presently have the ability to pay an immediate fine or restitution payment based on lack of income. Defendant does agree to make nominal payments towards agreed upon restitution estimated by the State of California at $3,985.

## III.

## DEFENSE SENTENCING RECOMMEDATION

For the reasons discussed herein, the defense respectfully recommends a sentence of time-served, which will be a total of 442 days at the time of sentencing (14 months 16 days). The defense recognizes this is a small variance below the Sentencing Guideline range of 18-24 months calculated by the defense. However, this credit calculation does not take into the consideration the approximately 9 months of additional jail time the defendant served in South Africa awaiting extradition to the United States. Given the specific characteristics of Mr. Kim and the circumstances of this offense, the defense believes that such a variance is appropriate in these circumstances.

# IV.

## SENTENCING CONSIDERATIONS UNDER 18 U.S.C. § 3553(A)

A. <u>General Sentencing Principles</u>

In light of *United States v. Booker*, 125 U.S. 738 (2005), the sentencing guidelines are advisory and are but one factor to be considered by the Court in fashioning an appropriate sentence, to wit, a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. Section 3553(a).  The Sentencing Guidelines are only a starting point for the Court in crafting a reasonable sentence.  Indeed, under Section 3553(a), the district courts are required to sentence below the range if such a sentence would be sufficient to achieve the purposes of sentencing.  As a result, the sentencing guideline range is no longer binding on the Court, as the Sentencing Guidelines are merely advisory today and only one of several factors to be considered in determining sentence.  *Booker*, 124 S.Ct. at 764-65.  18 U.S.C. Sections 3553(a) (1)-(7) provide the Court with other factors to include in the fashioning of a reasonable sentence:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentence and the sentencing range established for--

   (A) the applicable category of offense committed by the applicable category of

7

defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced (***the Sentencing Guideline Range***);

5.  any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. Section 994(a)(2) that is in effect on the date that defendant is sentenced;

6.  the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct; and

7.  the need to provide restitution to victim(s) of the offense.

*Id., 18 U.S.C. Sections 3553(a) (1)-(7).*

Although the Sentencing Guidelines provide a starting point for the Court's sentencing analysis, the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States,* 552 U.S. 38, 50 (2007).  The Court's ultimate duty is to ensure that the sentence imposed reflects the principles set forth in 18 U.S.C. §3553 (a).  *See Nelson v. United States,* 555 U.S. 350, 351 (2009).  The "overarching provision" of §3553 (a) is "to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the sentencing goals advanced in §3553 (a) (2)." *Kimbrough v. United States,* 552 U.S. 85, 111 (2007).  What is more, "the punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) (quoting *Williams v. New York*, 377 U.S. 241, 247 (1949).)

B.  Remorse and Acceptance of Responsibility

Mr. Kim has accepted responsibility for his conduct and will make a further statement to the Court at the time of sentencing.

Mr. Kim understands the seriousness of his actions and the impact his behavior has had in harming the environment. As a farmer in South Korea, Mr. Kim has depended on the land to maintain food and sustenance for his family. He has depended directly on the land most of his adult life. Mr. Kim deeply regrets the environmental damage he has caused, and fully realizes the seriousness of his transgressions.

C.  Seriousness of the Offense

The defense recognizes that the safeguarding of protected land and species is an important governmental interest. At the same time, Dudleya plants are not an endangered species and are non-narcotic in nature. Dudleya are admired as decorative house plants in South Korea. They are sought after for their beauty and relative rarity due to their inability to grow indigenously in the country. While knowing that coming to the United States to harvest these plants was illegal, Mr. Kim never imagined the seriousness of what he was doing. Nor did he comprehend the potential consequences of his actions. That has changed. The nearly two years Mr. Kim has spent incarcerated, both in the United States and in South Africa awaiting extradition, accurately reflect the seriousness of the offense.

D.  Respect for the Law and Deterrence

The Court can be confidant that Mr. Kim has learned his lesson and will never engage in this conduct again. Two long years of confinement have made an indelible mark on Mr. Kim. Mr. Kim's career harvesting Dudleya is over. The recommended sentence of 442 days, especially taking into consideration the additional 9 months Mr. Kim served in South Africa awaiting extradition, is sufficient to accomplish general deterrence and assure a message to Mr. Kim that these cases will be prosecuted in the United States and the violation of these laws will be taken extremely seriously.

E.  Sufficiency of the Proposed Sentence

It should be noted that the Defendant has been in custody during the pandemic and has done his best to cope with the near total isolation from his parents, children, other family members and friends. He, along with his co-inmates, have suffered through long stretches of lock downs, quarantines, and the fear of the unknown, namely, contracting COVID19. Making things even more difficult, Mr. Kim's entire support system lives across the globe.

DEFENDANT'S SENTENCING POSITION MEMORANDUM

Additionally, as noted previously, Mr. Kim speaks only Korean. For the last approximately 2 years, Mr. Kim has been confined in an environment where he is unable to meaningfully communicate with others. As a result, Mr. Kim has been subjected to a degree of forced solitary confinement.  One expert who studied similar scenarios "wrote that this situation is akin to the anguish experienced by a stroke victim who is surrounded by conversations but cannot participate." *See Linguistic Solitary Confinement*, THE ECONOMIST, April 16,2013, *available at* https://www.economist.com/johnson/2013/04/16/solitary-linguistic-confinement. Compound that with the fact Mr. Kim has no family or friends in the United States. His correspondence with loved ones, including his children, has been intermittent at best, and almost exclusively via electronic communication.

F. <u>Need to Avoid Sentencing Disparities</u>

Though the defense is recommending a small variance, the suggested sentence of 442 days, is actually well above the average sentence for environmental crimes. In 2018, the mean sentence for environmental crimes was 3 months in custody and the median sentence was 0 months. *See 2018 Annual Report and Sourcebook of Federal Sentencing Statistics*, Table 27, available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/Table27.pdf (last visited September 9, 2019). Indeed, 70% of environmental offenders received probation or a fine only. *See 2018 Annual Report and Sourcebook of Federal Sentencing Statistics*, Table 13, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/Table13.pdf (last visited September 9, 2019). The defense recommended sentence is still more than 4 times the mean sentence for such crimes.

Additionally, Mr. Kim had a co-defendant in this case that was sentenced on September 16, 2019, by this Court to a time served sentence of 122 days (Dkt. 48). The primary difference between Mr. Kim and his co-defendant was a 2-level increase for Mr.

Kim's aggravating role as a leader organizer. Given the similarities between the two, the additional 322 days the defense is requesting seems to be more than adequate to reflect Mr. Kim's aggravating role in comparison to his previously sentenced co-defendant.

Finally, upon completion of his sentence in this case, Mr. Kim also awaits extradition to face state court charges for this identical conduct. These state court charges have yet to be dismissed despite this federal prosecution, and it appears likely that Mr. Kim will face extradition and further prosecution once this federal case is finished.

G. Protection of the Public

The public does not require protection from Mr. Kim. The defendant has no history of violence, and the charged offense does not include any allegations that Mr. Kim acted in way that endangered the health or safety of others. Despite one similar offense in South Africa, Mr. Kim has no other criminal history. As soon as he can, Mr. Kim will return to South Korea to try and re-start his family farm.

**III.**

**COVID 19 HOUSING AND INCARCERATIONCONDITIONS JUSTIFY A DOWNWARD VARIANCE**

The Defendant requests that the Court take into account the effects of COVID19 on those who are currently incarcerated.

The entire period of Mr. Kim's incarceration has taken place during the pandemic. He has lived through an extremely scary period of time to be in jail. He has lived through the various upticks of COVID19, and during periods that many detention centers, jails and prisons were reporting significant levels of prisoners testing positive for COVID19. Mr. Kim himself has contracted COVID19 while in incarcerated, luckily with relatively minor symptoms, and lives in fear of contracting the omicron variant of this virus again.

DEFENDANT'S SENTENCING POSITION MEMORANDUM

Jails have responded by keeping inmates in virtual lockdown with little access to services (such as educational and recreational services), little socialization amongst inmates (to the extent Mr. Kim is even able to communicate effectively with inmates and staff) and a complete cessation of visits by family and friends. Even in-person attorney visits have been significantly curtailed at various times during Mr. Kim's incarceration. This is something particularly detrimental to an inmate like Mr. Kim, who receives no visits from family and friends, all of whom live in South Korea and are unable to visit in-person.

The U.S. Attorney's office offered some defendants plea agreements that have an extra 2 offense level reduction due to COVID 19.  The Defendant urges the Court to take into consideration this issue and recognize that a variance is warranted to avoid disparities and to accommodate the difference in housing conditions that inmates are now confronting due to COVID19.

## IV.

## CONCLUSION

For the above reasons, Mr. Kim respectfully requests that the Court sentence him to 442 days or time served.

Dated: January 5, 2022              Respectfully submitted,


By:     __//s// Jeremy Lessem_____
         JEREMY I. LESSEM
         Attorney for Defendant
         Byungsu Kim

DEFENDANT'S SENTENCING POSITION MEMORANDUM