TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DENNIS MITCHELL (Cal. Bar No. 116039)
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorneys
Environmental and Community Safety Crimes Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2484/894-8644
     E-mail:    dennis.mitchell@usdoj.gov
                matthew.o'brien@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-329-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION; EXHIBITS |
| v. | |
| BYUNGSU KIM, | Hearing Date: January 13, 2022 |
| Defendant. | Hearing Time: 8:30 a.m. |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Dennis Mitchell and Matthew O'Brien, hereby files its Sentencing Position as to defendant BYUNGSU KIM.

   This submission is based upon the attached memorandum of points and authorities and exhibits thereto, the Presentence Investigation Report disclosed on November 24, 2021, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 6, 2022	Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


          /s/
MATTHEW W. O'BRIEN
DENNIS MITCHELL
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

I.   INTRODUCTION..................................................1

II.  FACTUAL BACKGROUND............................................2

     A.   Defendant's Scheme.......................................2

     B.   Defendant's Flight and Recapture.........................3

III. THE PRESENTENCE REPORT........................................5

IV.  THE GOVERNMENT'S SENTENCING RECOMMENDATION....................6

     A.   The Nature and Circumstances of the Offense..............6

     B.   The Loss Amount..........................................9

          1.   CDFW's Estimate of $602,950.........................9

          2.   Dr. Margulies' Estimate of Between $113,755 and
               $255,415...........................................10

          3.   Defendant's Estimate of $108,793...................11

     C.   Defendant's History and Characteristics.................12

     D.   The Section 3553(a)(2) Factors..........................14

     E.   The Need to Minimize Sentencing Disparities.............14

V.   CONCLUSION...................................................15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On September 9, 2021, defendant BYUNGSU KIM ("defendant") pled guilty pursuant to a plea agreement to Count Two of the indictment, which charges him with attempting to export plants taken in violation of state law, in violation of 16 U.S.C. §§ 3372(a)(2)(B), (a)(4), 3373(d)(1) and 18 U.S.C. § 2(a), (b), a felony offense.  In the factual basis for defendant's plea agreement, he admitted to removing more than 3,000 live Dudleya plants from the ground in remote state parks in Northern California, and then attempting to smuggle them to Korea for sale on the black market.  After learning of the indictment in this case in May 2019, defendant fled to Tijuana and then Korea, only to be caught in South Africa five months later carrying out the same scheme.

In defendant's plea agreement, the parties agreed to a base offense level and certain enhancements, but left open the issue of the loss amount.  At the time of the plea, the government estimated the value of the stolen plants on the Korean black market would have been $602,950, based on research conducted by the California Department of Fish & Wildlife ("CDFW").  Out of an abundance of caution, the government subsequently retained an expert to provide a second estimate of the loss amount.  The expert, Dr. Jared Margulies, conservatively estimated that the plants' value on the Korean black market would have been between $113,755 and $255,415.

On November 24, 2021, the United States Probation Office issued a Presentence Investigation Report ("PSR") for defendant.  The government agrees with the PSR's adoption of Dr. Margulies'

calculations as well as its findings regarding defendant's offense level and Guidelines range of 24-30 months.

The government recommends a sentence of 36 months' imprisonment. This is six months higher than the high end of the Guidelines range because (1) defendant fled from the United States specifically to avoid this prosecution, and (2) the conservative loss estimate represents only a fraction of defendant's likely gains from his scheme.

**II.  FACTUAL BACKGROUND**

    **A.  Defendant's Scheme**

In October 2018, defendant and co-defendants Youngin Back ("co-defendant Back") and Bong Jun Kim ("co-defendant Kim") arrived in the United States to carry out a scheme by which they would drive from Los Angeles to remote state parks in Northern California, steal thousands of live Dudleya plants from the parks, drive the plants back to Southern California, and smuggle them to Korea using fraudulently obtained documents and an exporter in Compton.  (PSR ¶¶ 16-24; Dkt. No. 72 at 6-8.)

From October 14 through 16, 2018, defendant and co-defendants Back and Kim (collectively "defendants") harvested Dudleya plants from DeMartin State Beach in Klamath, California and from Del Norte Coast Redwoods State Park.  While harvesting these plants, defendant knew that the taking of the Dudleya plants from those locations was unlawful.  For example, he had conducted internet searches on his smartphone for "poaching succulents" and "dudleya," and had read a press release regarding the arrest and convictions of three other Dudleya poachers.  (PSR ¶ 19; Dkt. No. 72 at 6:16-25.)

2

Defendants then drove with the plants to a nursery in Vista, California (the "Vista Nursery"), in San Diego County, and unloaded the plants. The next day, they drove to Russian Gulch State Park in Mendocino County, where they harvested even more Dudleya plants over a three-day span. On October 25, 2018, defendants drove back to the Vista Nursery and unloaded their second haul of Dudleya plants. (PSR ¶¶ 20-21; Dkt. No. 72 at 6:26-7:9.)

On October 29, 2018, defendant lied to a San Diego County Agricultural Inspector so that he could obtain the necessary paperwork to export the plants. Specifically, defendant claimed that the origin of the Dudleya plants was San Diego County (rather than Del Norte and Mendocino Counties) and he claimed there were only 1,397 plants (rather than more than 3,000 plants). Based on defendant's misrepresentations, the Inspector issued a phytosanitary certificate to defendant so that he could export the plants. (PSR ¶ 22; Dkt. No. 72 at 7:10-20.)

Defendants then brought the Dudleya plants to a shipping company in Compton and unloaded them. After they drove away, law enforcement officers arrested defendants (on state charges) and found over 3,000 Dudleya plants in 34 cardboard boxes at the shipping company. These were the same plants that defendants had stolen from the state parks. (PSR ¶ 23; Dkt. No. 72 at 7:21-8:4.)

**B. Defendant's Flight and Recapture**

Law enforcement officers confiscated defendant's passport following his arrest on the state charges. Three months later, defendant fraudulently obtained a new passport by telling the Korean Consulate in Los Angeles that he had lost the passport. (PSR ¶ 26; Dkt. No. 72 at 8:11-16.)

On May 17, 2019, co-defendant Kim was arrested on the federal charges in this case as he was boarding a flight to Korea at Los Angeles International Airport. (Dkt. No. 12.) The government contacted a lawyer for defendant, who said that defendant was in California and would immediately turn himself in. Instead, on May 22, 2019 (or perhaps early in the morning on May 23, 2019), defendant and co-defendant Back crossed into Mexico through the Tijuana-San Yisidro border crossing on foot. Using the fraudulently obtained passports, they then flew from Mexico to China on May 23, 2019, and then flew from China to South Korea. (PSR ¶¶ 12, 26; Dkt. No. 72 at 8:17-22; Dkt. No. 12.)

On October 8, 2019, defendant and another individual were arrested in South Africa for illegally collected plants from protected areas in South Africa to export to Korea. Defendant pled guilty to the charges in South Africa and was sentenced to six years' imprisonment (suspended for a term of five years). Defendant then was extradited to the United States in October 2020 to face prosecution for this case and the related state criminal case (which remains pending). (PSR ¶¶ 12, 13, 27, 55; Dkt. No. 72 at 8:23-28.) Co-defendant Back remains a fugitive.

//
//
//

**III. THE PRESENTENCE REPORT**

The PSR calculated an offense level of 17 as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2Q2.1(a) |
| Pecuniary gain: | +2 | U.S.S.G. § 2Q2.1(b)(1) |
| Loss/gain: | +10 | U.S.S.G. §§ 2Q2.1(b)(3)(A), 2B1.1(b)(1)(F) |
| Aggravating role: | +2 | U.S.S.G. § 3B1.1(c) |
| Acceptance of Responsibility | -3 | |
| TOTAL: | 17 | |

(PSR ¶¶ 36-51.)

The PSR found that the seized plants' value on the Korean black market would have been between $113,755 and $255,415, and, "in the interest of lenity toward the defendant," used the mid-point of this range to conclude that a 10-level enhancement should apply pursuant to Section 2B.1.1. (Id. ¶¶ 39-40.)

The PSR calculated that defendant falls within criminal history category I. (Id. ¶¶ 55-56.) Computing an offense level of 17 and a criminal history category I, the PSR determined that defendant's advisory Guidelines range is 24-30 months. (Id. ¶ 81.)

The PSR also found that defendant owes restitution in the amount of $3,985 to the State of California. (Id. ¶ 92.) This was the expense to the State of replanting some of the seized Dudleya plants at state parks. (Id. ¶ 29.)

The government has no objections to the PSR.[1]

---

[1] The government disagrees with some of the Probation Officer's opinions, such as in Paragraphs 95 and 96 (not identifying any factors that justify a departure or variance), but is not objecting since the grounds for an upward departure and variance are contained elsewhere in the PSR. Likewise, while the government doubts that
*(footnote cont'd on next page)*

**IV. THE GOVERNMENT'S SENTENCING RECOMMENDATION**

The government recommends that defendant be sentenced to 36 months' imprisonment, three years of supervised release, restitution in the amount of $3,985 payable to the State of California, and a special assessment of $100.[2]

The recommended sentence is reasonable and necessary to accomplish the purposes set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220 (2005), requires the Court to consider the factors identified in Section 3553(a) when imposing a sentence. Among the factors to be considered are the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to deter future criminal conduct, promote respect for the law, and provide just punishment. 18 U.S.C. § 3553(a). The recommended sentence is appropriate in light of these factors.

**A. The Nature and Circumstances of the Offense**

Defendant orchestrated a scheme to enter the United States to steal thousands of living plants from California state parks and smuggle them to his native Korea so that he could sell them on the black market. He was the ringleader: he recruited his co-defendants into the scheme, supervised their criminal conduct, and paid for their expenses. (PSR ¶¶ 16, 44-45; Dkt. No. 72 at 8:8-10; Exh. A at 15-16 (¶¶ 34(a), 35(b)).)

---

defendant "has no income [or] assets" (PSR ¶ 76) (for the reasons set forth in Part IV.C, infra), the government does not dispute that that is what defendant told the Probation Officer.

[2] If for any reason the Court finds that defendant's offense level is 21 or greater, the government would recommend a sentence in the middle of defendant's Guidelines range, pursuant to the parties' plea agreement.

6

Defendant's conduct was willful:

- Defendant admits in the plea agreement that when he harvested the plants from the state parks he knew his conduct was unlawful (Dkt. No. 72 at 6:20-22);
- In post-arrest interviews, co-defendants Back and Kim both said that defendant previously had told them that their conduct was illegal (Exh. A at 16 (¶¶ 34(c), 35(c));
- A search of defendant's smartphone following his arrest showed that he had read a press release about the arrest and convictions of three other Dudleya poachers and he had conducted searches for "poaching succulents" and "dudleya" (PSR ¶ 19; Dkt. No. 72 at 6:16-25); and
- Defendant used an alias ("Neo") when interacting with the San Diego County Agricultural Inspectors, and always paid in cash. (Exh. A at 12 (¶ 26(d)).)

Defendant's willful criminal conduct in October 2019 was not an isolated event: he had carried out the same scheme repeatedly in California. Defendant had traveled to the United States more than 50 times since 2009. (Id. at 7 (¶ 18).) Customs records show that he was travelling for succulent-related purposes and often with tens of thousands of dollars in cash (sometimes declared, sometime not) and fake phytosanitary certificates. (Id. at 7-8 (¶¶ 17, 18(a)-(g)).) His trips to the United States corresponded to (1) the dates that phytosanitary certificates were issued to the Vista Nursery, and (2) the dates when the shipping company in Compton exported shipments to defendant's consignee in Korea. (Id. at 12-13 (¶¶ 27-28).) A search of phytosanitary certificates issued to the Vista Nursery by San Diego County revealed that the Vista Nursery had obtained

7

certificates for at least 122,316 Dudleya plants between 2013 and 2018. (PSR ¶ 25 n.2.) Given that defendant lied to the Agricultural Inspector on October 29, 2018 by claiming that he was exporting only 1,397 Dudleya plants - when he actually was attempting to export more than twice that amount (PSR ¶ 22; Dkt. No. 72 at 7:10-20) - defendant and the Vista Nursery almost certainly smuggled far more than 122,316 Dudleya plants between 2013 and 2018.

The poaching of Dudleya plants for export is a serious problem throughout California. (See, e.g., Exh. B (March 9, 2019 article entitled "Plant Smugglers Take 'Massive' Toll on California's Dudleya Farinosa Succulent Species").) Dudleya are slow-growing, fragile plants under severe threat from illegal poaching for the black market, particularly in Asia. Ten species of Dudleya are listed as threatened or endangered by California and federal officials. The poaching problem is so bad that in September 2021, Governor Newsom signed AB 223, a new law that established penalties of up to $500,000 for poaching Dudleya plants from state and private lands. Many of the plants that defendant poached from California state parks were decades old.

While defendant deserves credit for accepting responsibility in this case, his acceptance was far from timely. After learning of the federal charges against him in May 2019, defendant did not turn himself in (as his lawyer had told prosecutors he would do). Instead, the next day, defendant fled to Mexico, and then China, and then Korea. Defendant never would have been arrested on the federal charges in this case had it not been for his insatiable greed: knowing that he had been indicted for poaching succulents in the United States, he travelled to South Africa to commit the same

8

scheme.  Only after South African prosecutors successfully obtained defendant's conviction and only after he was extradited to the United States did he finally accept responsibility.

  **B.** **The Loss Amount**

    1. CDFW's Estimate of $602,950

  The government's initial estimate of the value of the seized plants on the Korean black market was $602,950.  (PSR ¶ 25 n.3; Exh. A at 19 (¶ 38).)  This was based on research conducted by CDFW shortly after defendants' arrests.  (Exh. A at 19 (¶ 38).)  CDFW retained Stephen McCabe, a Research Consultant at the University California of Santa Cruz, who analyzed the plants seized on October 29, 2018 and believed that they had been taken from the wild.  (Id. at 18 (¶ 37).)

  In conjunction with McCabe's analysis, CDFW wardens counted the seized plants as well as the number of "heads" on each plant, since the value of Dudleya plants taken from the wild often is based on the number of heads they possess (i.e., the more heads, the higher the price).  For example, there were 1,684 plants with one head each, 981 plants with two heads, and then a descending quantity of plants as the number of heads increased (e.g., only one plant had 45 heads, the highest number in the group).  (See Exh. C at USAO_800.)  A CDFW warden then researched the value of the plants based on the prices listed on a Korean website (http://en.explant.co.kr) for Dudleya farinosa.  (Id.)

  As of September 28, 2018, the website listed different prices depending on the number of heads.  For example, a Dudleya farinosa with one head cost between $42.72 and $44.50, while a plant with 13 heads cost between $1,068 and $2,136.  (Id. at USAO_800.)

Conservatively using the lowest price for each type of plant, CDFW calculated that the 3,715 seized plants were worth an estimated $602,950 on the Korean black market. (Id.)

        2.   <u>Dr. Margulies' Estimate of Between $113,755 and $255,415</u>

Out of an abundance of caution, the government retained an expert to provide a second estimate after defendant pled guilty. The government retained Dr. Steven Margulies, an Assistant Professor of Geography at the University of Alabama with experience studying the Asian black market for <u>Dudleya</u> plants. (<u>See</u> Exhs. D and E.) Dr. Margulies has studied the illicit global trade in succulents for the past four years. He is the author of a soon-to-be-published book entitled <u>The Succulent Subject: A Political Ecology of Plants, Desire, and Illicit Trade</u>, and has published peer-reviewed articles on the subject as well. (<u>See</u> Exh. E at 1.) In 2019, Dr. Margulies spent a month in Korea researching the black market for <u>Dudleya</u> plants. (<u>See</u> <u>id.</u>)

Dr. Margulies did not think that CDFW's estimate of $602,950 was incorrect; in his opinion it was "certainly within the realm of possibility." (<u>Id.</u> at 2.) But he adopted a more conservative methodology, accounting for variables such as whether defendant would have immediately sold the smuggled <u>Dudleya</u> plants directly to consumers, or to middlemen in Korea who take care of poached <u>Dudleya</u> plants for 2-3 years prior to reselling them to consumers, or whether defendant would have held on to the plants himself for 2-3 years prior to selling them to consumers. (<u>Id.</u> at 3.) Given these uncertainties, Dr. Margulies conservatively estimated that the plants would have been worth between $113,755 and $255,415 on the black

market.  (Id. at 3, 5.)  The PSR adopted Dr. Margulies' findings, concluding that the mid-range of his estimate falls between the $150,000-$250,000 range for a 10-level enhancement.  (PSR ¶¶ 25, 38, 40.)  The government concurs.

### 3. Defendant's Estimate of $108,793

Defendant has obtained a declaration from Sung Kyung Kim, who claims to be one of defendant's customers on the black market in Korea.  Mr. Kim's estimate of what he would have paid defendant for the plants is $108,793.  This estimate is flawed for at least four reasons.

First, Sung Kyung Kim's estimate lacks reliability.  There is no evidence that defendant was planning on selling the stolen plants to Sung Kyung Kim (he does not claim otherwise).  Nor is there any way of knowing if Syung Kyung Kim's prices are representative of other buyers on the Korean black market.  Indeed, there is no way for the government (or the Court) to gauge the impartiality of Sung Kyung Kim, who could be a co-conspirator.

Second, Sung Kyung Kim appears to have based his estimate on his current prices.  As Dr. Margulies notes, however, the current prices for Dudleya on the Korean black market are "anywhere between one-half to one-third of 2017-2018 values."  (Exh. E at 3.)  As a result, even if the Court were to accept that defendant might have sold the seized plants to Sung Kyung Kim for $108,793 in November 2021, the plants' value to Mr. Kim in late 2018 would have been between $144,694 (33% more) and $163,189 (50% more).

Third, whether the loss amount is $602,950, or between $113,755 and $255,415, or lower, such an amount represents a small fraction of the fortune that defendant derived from his scheme.  As set forth in

11

Part IV.A, supra, defendant likely carried out similar, yet undetected, smuggling of Dudleya stolen from California public lands on dozens of prior occasions. Indeed, five months after fleeing from the United States in this case, defendant was right back at it in South Africa, where he was caught with 2,018 poached succulent plants estimated to be worth at least 2,476,745 South African Rand (approximately U.S. $175,493). (See Exh. F ("Confiscation Order") at 5 of 7.)

Fourth, while it is necessary for sentencing purposes for the Court to make a finding re the loss amount, the plants that defendant ripped from the ground in protected public lands are essentially priceless. Defendant harvested the plants from fragile coastal bluffs where the individual plants had been growing, slowly, for decades. He destroyed this timeless ecological process for nothing but his own greed, knowing that he and his recruits were committing a crime in a foreign country. As defendant's plea agreement from South Africa notes, "the collection of these plants is an ecological tragedy," particularly where defendant sought an "astounding quantity of large 'trophy plants'. . . in complete disregard for nature and the law." (Exh. G at 10.)

While rangers and volunteers were able to replant some of the seized plants (see Exh. H), it is unknown whether these plants will survive over the long term. And the replanting itself used up valuable resources, as the State expended thousands of dollars to carry it out. (PSR ¶ 29.)

**C.   Defendant's History and Characteristics**

In mitigation, defendant claims to have elderly, sick parents; he experienced hardship during his childhood; he has several medical

12

issues; and he had no known criminal history prior to his arrest in the underlying state case in October 2019.  (PSR ¶¶ 55, 62, 64, 69.)

As described above, however, the evidence indicates defendant had been carrying out this scheme for at least five years before being caught.  Defendant's actions after being caught do not reflect well on his character:

- In January 2019, defendant lied to the Korean Consulate in Los Angeles in order to get a new passport;
- In May 2019, after learning that co-defendant Kim was arrested, and after defendant's lawyer told prosecutors that he would turn himself in, defendant fled the country; and
- In October 2019, defendant was caught carrying out an identical scheme in South Africa.

This case presents an unusual situation in that defendant has no "official" criminal history but he is already a confessed recidivist. Likewise, the PSR did not count the South African convictions.  (PSR ¶ 55 & n.4.)  Accordingly, defendant's criminal history under-represents both his criminal history and "the likelihood that the defendant will commit other crimes," justifying an upward departure under Section 4A1.3(a)(1) of the Guidelines.

As for defendant's ability to make restitution, the government is skeptical of his claim that he has no income or assets.  (PSR ¶ 76.)  On January 28, 2020, the South African court ordered defendant to pay a criminal fine of approximately 2,476,745 South African Rand in order to be released for his extradition.  (See Exh. F ("Confiscation Order") at 4, 5 of 7.)  That same day, defendant paid the entire fine (U.S. $175,493) in cash to the Court.  (See id.

at 6 of 7.)  Defendant's ability to immediately pay such a large fine to secure his release undermines his current claim that he is broke.[3]

### D. The Section 3553(a)(2) Factors

Section 3553(a)(2) requires the Court to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of defendant, and to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The recommended sentence of 36 months would achieve many of those objectives.  For the reasons set forth in Part IV.A, supra, such a sentence would reflect the seriousness of the offense and promote much-needed respect for the law.  This is a case where both specific and general deterrence are critical:  defendant is a recidivist for whom a substantial sentence is necessary to deter further poaching, and Dudleya poaching has become a widespread problem in California (as evidenced by the recent passage of AB 223).

### E. The Need to Minimize Sentencing Disparities

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  The recommended sentence will not lead to sentencing disparities between similarly situated defendants.

On September 16, 2019, the Court sentenced co-defendant Kim to time served (four months) and three years of supervised release.

---

[3] Likewise, defendant apparently told South African officials that his annual income was the equivalent of 9 million South African Rand (approximately $577,000).  (See Exh. G at 15 of 17 (¶ 13.6).)

(Dkt. No. 49.)  Defendant and co-defendant Kim are not similarly situated.  Defendant recruited co-defendant Kim (who was desperate for income to support his five daughters after his business shut down) to accompany him on the October 2019 trip for a promised payment of $1,800.  (See Dkt. No. 45 at 5:17-6:3.)  Despite the terrible consequences that defendant caused co-defendant Kim to suffer, defendant never even paid him the $1,800.  (See id. at 6:18-21.)  In contrast, defendant stood to make a small fortune from the scheme, which he devised and managed.

A sentence of 36 months, while above the Guidelines range, would not lead to any disparities.  By fleeing the United States and almost immediately repeating his scheme elsewhere, defendant has put himself in a unique situation warranting a sentence of 36 months.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to 36 months' imprisonment, three years of supervised release, restitution in the amount of $3,985 payable to the State of California, and a special assessment of $100.

Dated: January 6, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

           /s/
MATTHEW W. O'BRIEN
DENNIS MITCHELL
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

15